STACEY M. GARRETT, CASB No. 155319
stacey.garrett@kyl.com
REBEKAH M. ZUFELT, CASB No. 356365
rebekah.zufelt@kyl.com
Keesal Young & Logan
A Professional Corporation
The Waterfront at Catalina Landing
310 Golden Shore, Suite 400
Long Beach, CA 90802
Telephone:   (562) 436-2000
Facsimile:   (562) 436-7416

KAREN R. KING (*pro hac vice application to be filed*)
kking@maglaw.com
CHRISTOPHER B. HARWOOD (*pro hac vice application to be filed*)
charwood@maglaw.com
Morvillo Abramowitz Grand Iason & Anello PC
565 Fifth Avenue
New York, New York 10017
Telephone:   (212) 856-9600
Facsimile:   (212) 856-9494

Attorneys for Plaintiff
CHARLET CHUNG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLET CHUNG,<br><br>                    Plaintiff,<br><br>            vs.<br><br>WESTJET AIRLINES LTD., a Canadian limited company<br><br>                    Defendant. | Case No. 2:25-cv-11497<br><br>**COMPLAINT:**<br><br>**1. VIOLATION OF THE CONVENTION FOR THE UNIFICATION OF CERTAIN RULES FOR INTERNATIONAL CARRIAGE BY AIR (A/K/A "MONTREAL CONVENTION")**<br><br>**2. DEFAMATION**<br><br>**3. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

///

- 1 -

Plaintiff CHARLET CHUNG ("Ms. Chung" or "Plaintiff"), through her undersigned counsel, for her complaint against Defendant WESTJET AIRLINES LTD. ("WestJet" or "Defendant") for violation of the Convention for the Unification of Certain Rules for International Carriage by Air (a/k/a "Montreal Convention"), defamation, and intentional infliction of emotional distress, alleges as follows:

## I.

## **INTRODUCTION**

1. This case arises from the traumatizing experience of an Asian-American passenger on a WestJet flight from Winnipeg to Los Angeles on October 28, 2024, and the disparaging and destructive treatment of the passenger by WestJet flight attendants during the four-and-a-half-hour flight, and then by WestJet itself in the months that followed.

2. After enduring physically and verbally abusive behavior by a white male passenger sitting behind her prior to take-off, Ms. Chung not only had to defend herself, but when a flight attendant finally came over, instead of trying to protect her or at least to diffuse the situation, the WestJet flight attendant turned a blind eye to the male passenger's threatening behavior and instead blamed the victim—Ms. Chung—accusing her (not her male tormenter) of having caused a disturbance.

3. Even after Ms. Chung explained the situation to the flight attendant, the WestJet employee continued to speak to Ms. Chung as though she had done something wrong, demanded that Ms. Chung change seats over her objection, told Ms. Chung that if she refused she would have the pilot force her off the plane, made a series of demeaning and embarrassing comments about Ms. Chung loud enough for the entire plane to hear, and then refused Ms. Chung's repeated request to use the lavatory. When the pain became overwhelming, Ms. Chung had to plead again and again to be allowed to use the bathroom to avoid wetting herself.

4. During the remainder of the flight, the initial WestJet flight attendant enlisted the aid of other flight attendants to make the four-plus-hour flight a

1  nightmare for Ms. Chung, including by spilling water on her, speaking to her only in
2  aggressive and hostile tones, and near the end of the flight, without any provocation,
3  threatening to call the police to have them detain Ms. Chung at the gate upon arrival
4  The airline's treatment during the flight was humiliating, physically painful, and
5  traumatizing for Ms. Chung.  Ms. Chung was forced to seek medical treatment for her
6  symptoms caused by the WestJet employees' behavior on the flight.

7        5.    Unfortunately, WestJet made no effort to correct or apologize for
8  the actions of its staff after the flight.

9        6.    When Ms. Chung shared her experience on social media, the airline
10 did not issue an apology and instead, conducted a supposed "investigation" in which
11 Ms. Chung was never interviewed.

12       7.    Using the results of its sham "investigation," WestJet proceeded to
13 bully Ms. Chung, disparage her, and issue a false and damaging press statement about
14 her.  Among other things, the press statement claimed that Ms. Chung's account of the
15 flight was "unfounded" and falsely painted her as a liar.

16       8.    When Ms. Chung complained that the press statement contained
17 false statements about her and was causing significant damage to her career, WestJet
18 refused to remove the false and defamatory statements.  Instead, it misled Ms. Chung
19 about its willingness to remove the press statement and discuss a reasonable and
20 appropriate resolution of the situation in an effort to prevent or delay her from speaking
21 further about her experience, and to continue to punish her for the negative publicity
22 about the airline.

23       9.    Ms. Chung brings this lawsuit to hold WestJet accountable for the
24 damages caused by its actions.  And because she will not be bullied by a corporation
25 who embraces discriminatory treatment of its passengers, who makes snap judgments
26 about people and then doubles down to reinforce a false narrative, who lacks self-
27 reflection and a desire to improve institutional weaknesses, and who became bullies
28 themselves to try to silence her.

KYL4937-0989-3502.1

## II.

## PARTIES

10. Plaintiff Charlet Chung is an adult Asian-American woman. At all relevant times, Ms. Chung was a resident of California living in Los Angeles.

11. Defendant WESTJET AIRLINES LTD is a foreign air carrier of Canada, engaged in the scheduled transportation of passengers.

12. WestJet is permitted to operate in the United States as a foreign air carrier by the U.S. Department of Transportation and U.S. Federal Aviation Administration, pursuant to 49 USC § 41301, through which it operated WestJet Flight WJ1314 ("the Flight') from Winnipeg to Los Angeles on October 28, 2024.

## III.

## JURISDICTION AND VENUE

13. Subject matter jurisdiction is proper under 28 U.S.C. § 1331, in that this action arises from a treaty agreement, namely the Convention for the Unification of Certain Rules Relating to International Carriage by Air, opened for signature on May 18,1999, reprinted in S. Treaty Doc. 106-45 at 27 (2000) 1999 WL 33292734 (entered into force November 4, 2003) (treaty), commonly referred to as the Montreal Convention.

14. This Court also has supplemental subject matter jurisdiction over the claims under state law pursuant to 28 U.S.C. § 1367.

15. Defendant WestJet is subject to personal jurisdiction in this District because it has a regular and established business in this District, including its ground operation and other permanent business operations located at Los Angeles International Airport, Terminal 2, Sky Way, Los Angeles, California. WestJet is also alleged to have committed torts that caused damage to plaintiff in this District.

16. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b) and Article 33 of the Montreal Convention as the State of California was (and continues to

KYL4937-0989-3502.1

be) the principal and permanent place of residency of Plaintiffs and the place from which Defendant operates services for the carriage of persons by air.

## IV.

## FACTUAL BACKGROUND

### THE FLIGHT

17. On October 28, 2024, Charlet Chung boarded an international WestJet flight from Winnipeg, Canada to Los Angeles, California.

18. After she took her seat, the passenger in the seat behind her, a white man significantly taller and larger than Ms. Chung, repeatedly and forcefully kicked the seat in front of him, occupied by Ms. Chung. The forceful kicking continued throughout the boarding process.

19. With the kicking being plainly intentional, Ms. Chung peered through the seats to see what the issue was, hoping somehow to diffuse the situation. When the passenger behind her saw her, his aggressive behavior intensified and he began taunting and verbally harassing her, using expletives and threatening speech. The tirade ended with him telling Ms. Chung to "oh chill out, fuck off."

20. Shocked, Ms. Chung said, "[e]xcuse me? Did you just tell me to fuck off?"

21. Although Ms. Chung had been the obvious victim of the unruly male passenger's physically and verbally intimidating behavior, when a WestJet flight attendant finally came over, the flight attendant did not come to Ms. Chung's aid (as Ms. Chung had assumed would be the case), but instead accused Ms. Chung—rather than the male passenger—of causing a disturbance and using inappropriate language on the plane. Ms. Chung tried to explain the situation, including that she was reacting to intimidating behavior and questioning the language he had used against her.

22. The WestJet flight attendant's immediate reaction was to threaten to offboard Ms. Chung. Even after Ms. Chung explained what had happened, the WestJet flight attendant did not do anything to comfort Ms. Chung or diffuse what obviously

KYL4937-0989-3502.1

1  had been a threatening situation due to the male passenger's behavior, did not even
2  change her accusatory attitude against Ms. Chung, and did not take any action against
3  the male passenger.  At that point, Ms. Chung tried to film the interaction to document
4  the behavior of the WestJet flight attendant.  Presumably recognizing that her behavior
5  had been entirely inappropriate, the WestJet flight attendant tried repeatedly to stop the
6  recording, and also changed her tone whenever the camera was on to make herself
7  appear reasonable.

23. The WestJet flight attendant continued to focus her attention on Ms. Chung rather than the threatening male passenger, asking Ms. Chung to leave her seat and move to the other side of the plane, as if she had been the one to do something wrong.

24. Trying to diffuse the situation, Ms. Chung said she would prefer to stay in the seat she had paid for, so long as the kicking didn't continue. Notwithstanding the reasonable resolution Ms. Chung had proposed, the WestJet flight attendant continued to insist that Ms. Chung leave her seat.  Not wanting to be penalized for a situation in which she had been the victim, Ms. Chung gave the same response.

25. At this point WestJet flight attendant became even more hostile. She repeated her threat, saying that if Ms. Chung continued to refuse to move seats, the pilot would force her off the plane.

26. At that point, after being physically and verbally threatened by the male passenger and then being the focus of accusatory and demeaning behavior by the flight attendant, culminating in her threatened removal from the plane, Ms. Chung had no choice but to leave her seat as directed by the WestJet flight attendant.

27. As Ms. Chung was relocated to the other side of the plane, the WestJet flight attendant directed a series of demeaning and embarrassing comments to Ms. Chung, loud enough for the entire plane to hear, including condescending lectures
///

KYL4937-0989-3502.1

about Ms. Chung causing trouble, and continued threats to offload Ms. Chung if she "kept using those words," and warning that there better not "be any more issues."

28. The flight attendant's comments had no purpose but to continue to demean and embarrass Ms. Chung. In contrast, when the flight attendant spoke to the male passenger, she was friendly and spoke in a hushed tone.

29. After Ms. Chung was moved to the other side of the plane, she was not permitted to leave her seat. An hour into the flight, she became increasingly uncomfortable because she needed to use the lavatory, but the flight attendants continued to glare at her. When the discomfort became intense, she rose from her seat and tried to walk to the lavatory, but the flight attendant blocked her path. Ms. Chung was told to return to her seat because her "behavior" required further discussion. Ms. Chung did not want to be lectured more and she needed to use the bathroom with urgency. She repeatedly asked to be allowed to get past the flight attendant to reach the lavatory, but the flight attendant deliberately pretended not to hear Ms. Chung and continued to block her from the lavatories.

30. Ms. Chung was forced to endure pain and discomfort while the WestJet flight attendant domineered over her. She spent over five minutes asking repeatedly to be allowed to use the facilities. Eventually the pain became overwhelming, and she was essentially begging in order to avoid wetting herself.

31. Only then did the WestJet flight attendant reluctantly allow Ms. Chung to use the lavatory.

32. For the remainder of the four-and-half-hour flight, Ms. Chung suffered additional physical and verbal torment at the hands of both the initial WestJet flight, as well as other flight attendants. During the beverage service, another flight attendant purposefully overfilled a cup with water and shoved it aggressively at Ms. Chung, causing water to spill on Ms. Chung, her seat, and the seat next to her. Both flight attendants raised their voices and sneered at Ms. Chung when asking if she wanted a snack, for no reason other than to intimidate her. In addition to spilling water

on her and using a sarcastic and demeaning tone whenever speaking to her, near the end of the flight, without any provocation or incident, a flight attendant threatened Ms. Chung that she may call the police and have them waiting at the gate to detain her for "verbal abuse and recordings."

33. Ms. Chung was horrified and traumatized throughout the flight, having suffered continual harassment, abuse, and attack by WestJet. Throughout the flight, Ms. Chung suffered headaches, urinary distress, respiratory distress, nausea, tightness in her chest, and elevated blood pressure.

34. That night, and for the weeks following, Ms. Chung found herself experiencing heart palpitations, insomnia, and anxiety. She struggled to formulate complete sentences, regulate her emotions, or process the physiological injuries brought on by the trauma of the flight.

35. Ms. Chung had to seek medical treatment for her symptoms as a result of the WestJet flight.

## POST-FLIGHT DEFAMATION

36. Ms. Chung began posting about her experience on her social media accounts, including TikTok and Instagram, where they garnered millions of views and thousands of comments. Many commenters described similar treatment by WestJet flight attendants, particularly against non-white passengers.

37. Ms. Chung posted videos of her conversation with the flight attendant in which the flight attendant berates her for using foul language (when she was merely reporting what the passenger behind her had said when verbally attacking Ms. Chung). Ms. Chung also posted pictures of the inexplicably friendly interaction between the flight attendant and the unruly passenger, in which the flight attendant casually kneels on Charlet's original seat, and appears to apologize to the passenger and his wife. Ms. Chung also posted videos after the incident in which she describes the events that occurred, how she was mistreated, and how devastated she felt in the incident's aftermath.

KYL4937-0989-3502.1

38. When legal counsel got involved, Ms. Chung decided to pause public discussion of her experience, and made a post on social media explaining that she had been advised to remain silent.

39. On January 18, 2024, WestJet posted a press release on its website accusing Ms. Chung of lying about the incident and further lying about being silenced by the airline:

> "We conducted a thorough investigation into Ms. Charlet Chung's claims regarding her experience on her October flight, and while we acknowledge that Ms. Chung's experience onboard was not a positive one for her, based on the information provided to us, her allegations of harassment and discrimination against WestJet are unfounded . . . . Contrary to what's being implied in her recent public statements, WestJet has never instructed Ms. Chung to remain silent in any form or to refrain from discussing this matter online. . . . We have been timely and respectful in our communications on this matter . . . . it is unfortunate that Ms. Chung continues to [discuss this matter in a public forum] despite our best efforts to resolve this matter amicably."

40. The Press Release falsely stated that Ms. Chung said she was silenced by WestJet. Indeed, her public statements were clear that she was refraining from speaking on the matter further on the advice of counsel.

41. The Press Release also asserts that Ms. Chung lied about the harassment and discrimination she endured on the flight. This is belied by the video evidence and her experience on that flight.

42. The Press Release also stated that WestJet attempted to resolve the issues between it and Ms. Chung amicably and promptly, implying that Ms. Chung is

- 9 -

KYL4937-0989-3502.1

the reason there has been no resolution.  To the contrary, over the last eight months, WestJet repeatedly ignored Ms. Chung's attempts to engage, gave no explanation or weak excuses for delay, did not respond to reasonable proposals, and was ultimately non-responsive.

43. The Press Release also falsely stated that WestJet had conducted a "thorough investigation." This cannot possibly be true since Ms. Chung was never even contacted by an investigations team to provide her recollections.  And there is no indication that any other passenger was interviewed.  Any purported investigation would have been incomplete, one-sided, and wholly unreliable.  The "thorough investigation" was nothing more than a self-serving tool to spread lies about Ms. Chung and promote a false narrative.

44. WestJet's press release was broadly available and widely seen.

45. Ms. Chung received numerous inquiries from professional contacts, family, fans, and strangers, over the defamatory statements. She was told by her agent and professional contacts that it was problematic for her career to have these statements on the internet about her.  Her agent and manager expressed concern that the statement wrongfully impugned Ms. Chung's character and would adversely impact her employability.

46. On numerous occasions, Ms. Chung—through her representatives—have complained to WestJet that the January 18, 2025, press release contained false and misleading statements that were defamatory, and was causing her to lose jobs and professional opportunities.

47. WestJet did not take down the press release.

48. In fact, WestJet was never seriously considering the request and merely pretended to be interested in reaching a resolution in order to delay action by Ms. Chung, discourage her from making public postings about her experience, and to keep the defamatory press release up as long as possible to inflict maximum damage.

///

KYL4937-0989-3502.1

49. WestJet continued the charade for multiple months, made false promises that it would provide a substantive response on proposals, and then ultimately stopped responding at all to requests for updates.

50. Ms. Chung has lost multiple job opportunities as a direct result of WestJet's public, false statements about her.

51. Among other things, Ms. Chung was not included this year on the invitation list for at least nine conventions due to the false statements by WestJet about her. One convention invitation that had already been issued was retracted after the statement was published. Appearances at conventions, and the merchandise sold at them, account for a significant portion of Ms. Chung's annual income.

52. In the past, Ms. Chung was regularly invited to over a dozen conventions each year. As of January 18, she had already been invited to three conventions for the upcoming year. However, after the January 18, 2025, Press Release, she has not been invited to a single convention.

53. Ms. Chung has also seen a steep decline in her acting jobs since the January 18 press release and she has heard that this is due to the statements WestJet made about her.

54. To date, WestJet has not removed or corrected its Press Release, despite being on notice that the statements are false and misleading, and that they are causing harm to Ms. Chung's career.

55. WestJet's refusal to correct its misstatements demonstrates willful action to inflict harm on Ms. Chung's reputation and career.

**FIRST CAUSE OF ACTION**

(Violation of The Montreal Convention)

56. Plaintiff incorporates and realleges the above-stated paragraphs as if fully stated herein.

///

KYL4937-0989-3502.1

57. The Convention for the Unification of Certain Rules Relating to International Carriage by Air (also known as the "Montreal Convention") is a multilateral treaty relating to the rules governing international carriage by air.

58. The United States signed the Montreal Convention on May 28, 1999, and ratified it on September 5, 2003.

59. The Montreal Convention entered into force on November 4, 2003.

60. The United States and Canada remained signatories of The Montreal Convention as of October 28, 2024.

61. On October 28, 2024, WestJet was a commercial air carrier certified and operating within the regulations of the United States Department of Transportation, and further in accordance with 14 CFR Part 121; and at all times, engaged in the business of carrying passengers for hire.

62. By virtue of her ticket on WestJet flight WS1314 Plaintiff Charlet Chung was party to a contract for international carriage with WestJet on October 28, 2024, as that term is known and defined in Article I of the Montreal Convention.

63. Pursuant to Article 17 of the Montreal Convention, WestJet is liable for damages or bodily injury sustained by a passenger on board the aircraft.

64. WestJet employees took direct action against Ms. Chung during flight WS1314, including:

    a. Physically relocating her on the plane;

    b. Refusing to allow her to use the lavatory;

    c. Threatening her with removal from the plane;

    d. Threatening to report her to law enforcement;

    e. Harassing her verbally and physically;

    f. Refusing to address her complaints of kicking and harassment by a fellow passenger.

65. WestJet failed to train adequately its employees on anger management, anti-discrimination, anti-harassment, and workplace conduct.

KYL4937-0989-3502.1

66. Ms. Chung has suffered physical, psychological, and emotional injury as a result of WestJet's actions, including pain, panic attacks, distress, cognitive impairment, anxiety and trauma.

67. WestJet is liable to Charlet Chung and she is entitled to receive full, fair and just compensation for her injuries and damages under the Montreal Convention.

## SECOND CAUSE OF ACTION

(Defamation)

68. Plaintiff incorporates and realleges the above-stated paragraphs as if fully stated herein.

69. WestJet's January 18, 2025, Press Release contained false and defamatory statements about Ms. Chung.

70. WestJet published the false statements to the world at large and it remains easily accessible to everyone including her professional community.

71. WestJet falsely accused Ms. Chung of lying about her experience on the WestJet flight.

72. WestJet falsely accuse Ms. Chung of lying about being silenced by the airline.

73. WestJet falsely accused Ms. Chung of refusing to resolve the matter amicably and being an uncooperative person.

74. WestJet published the statement without reasonable care to determine whether it was actually true or false by reviewing Ms. Chung's prior statements and video evidence.

75. When informed that the statement was false or misleading, WestJet did not provide a correction or clarification.

76. Instead, it continued to present the false Press Release knowing that it was damaging Ms. Chung.

///

77. WestJet's failure to correct its statement was intentional, malicious, and designed to inflict damage on Ms. Chung in retaliation for sharing her experience with WestJet.

78. WestJet's statement is defamatory per se because of the defamatory meaning is apparent on the face of the statement and without the necessity of explanatory matter.

79. As a result of WestJet's publication of the statement, Ms. Chung has suffered damage to her reputation and career.

## THIRD CAUSE OF ACTION

(Infliction of Emotional Distress Law)

80. WestJet acted with knowing and deliberate disregard for Ms. Chung's wellbeing by leaving their false and defamatory statement on their website, despite being informed that they were false and misleading, and causing damage to Ms. Chung's career.

81. WestJet also willfully misled Ms. Chung with false promises of potential resolution, while the defamatory Press Release remained publicly posted. Every day the Press Release remained posted caused her additional emotional distress because she could not publicly refute the falsities WestJet posted without jeopardizing the supposed dialogue with WestJet.

82. WestJet falsely claimed it was engaging in good faith discussions while secretly trying to delay and torment her with long periods of silence.

83. Throughout this entire period, despite Ms. Chung's pleas, WestJet maintained its false and defamatory statement on their public webpage.

84. Defendant WestJet acted knowingly fallaciously, outrageously, and in deliberate disregard of the high probability that emotional distress would follow, and in so doing intentionally inflicted emotional distress upon Ms. Chung

85. The conduct of WestJet was extreme and outrageous, causing physical, psychological, emotional, and financial damage to Ms. Chung.

KYL4937-0989-3502.1

WHEREFORE**,** Plaintiff Charlet Chung prays for a judgment against Defendant WestJet:

    1.    For compensatory damages, to be determined according to proof at trial, but in excess of $75,000.00, exclusive of interest and costs;

    2.    For injunctive relief including take down of the defamatory and false press release;

    3.    For punitive damages for her tort claims under California law;

    4.    For any and all other relief the Court deems just and proper.

DATED: December 2, 2025          /s/ Rebekah M. Zufelt
STACEY M. GARRETT
REBEKAH M. ZUFELT
KEESAL YOUNG & LOGAN

KAREN R. KING (*pro hac vice application to be filed*)
CHRISTOPHER B. HARWOOD (*pro hac vice application to be filed*)
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC

Attorneys for Plaintiff
CHARLET CHUNG

KYL4937-0989-3502.1

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff CHARLET CHUNG, certifies that this brief contains 3,320 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☒ complies with the word limit set by court order dated December 2, 2025.

DATED: December 2, 2025       */s/ Rebekah M. Zufelt*
STACEY M. GARRETT
REBEKAH M. ZUFELT
KEESAL YOUNG & LOGAN

KAREN R. KING (*pro hac vice application to be filed*)
CHRISTOPHER B. HARWOOD (*pro hac vice application to be filed*)
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO PC

Attorneys for Plaintiff
CHARLET CHUNG

- 16 -

KYL4937-0989-3502.1